IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHIRLENE O.,[1]

                     Plaintiff,                             Civ. No. 1:20-cv-00403-AA

      v.                                       **OPINION & ORDER**

COMMISSIONER OF SOCIAL
SECURITY,

                     Defendant.
_____

AIKEN, District Judge:

     Plaintiff Shirlene O. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

     On December 29, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on October 18, 2014. Tr. 115. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 6, 2018. *Id.* On January 16, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 122. On January 13,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and had not engaged in substantial gainful activity since the alleged onset date of October 18, 2014.  Tr. 117.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments through the date last insured: diabetes mellitus with history of bilateral lower extremity peripheral neuropathy; and status post hip fracture.  Tr. 117.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 118.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: Plaintiff can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl.  Tr. 118.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a tanning salon attendant and food order expediter.  Tr. 121-22.  As a result, the ALJ determined that Plaintiff was not disabled without reaching step five of the sequential analysis. Tr. 122.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).  Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) improperly assessing the medical opinion evidence of examining physician Ruth Lowengart, M.D.; and (2) by discounting Plaintiff's own subjective symptom testimony.

### I.    Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the opinion of examining physician Dr. Lowengart.  The Social Security Administration has altered the regulation which govern the evaluation of medical evidence for claims filed on or after March 27, 2017.  *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022).  This claim was filed on December 29, 2016 and so the older system applies.  Tr. 115.  The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat

the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted).  An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence."  *Id.*

Here, Dr. Lowengart examined Plaintiff on October 11, 2018, nearly two years after Plaintiff's date last insured.  Tr. 782.  Dr. Lowengart assessed Plaintiff with closed fracture of the neck of the right femur; osteoarthritis of the hip; osteoarthritis of foot joint; carpal tunnel syndrome of the bilateral upper limbs; bilateral ulnar neuropathy; trigger finger of the little finger; diabetic peripheral neuropathy associated with type II diabetes mellitus; type 2 diabetes mellitus; osteopenia; and cognitive dysfunction.  Tr. 785-86.  Dr. Lowengart opined that Plaintiff was completely disabled as of October 18, 2014.  Tr. 786.

> She has limitations in standing, sitting, walking due to hip pain as a result of the fracture in 2014 and documented hip arthritis as of 2016.  She has difficulty with balance and walking also due to foot arthritis, diabetic peripheral neuropathy (documented in 2015) resulting in pain and weakness of the feet.  She has weakness of the hands due to documented carpal tunnel syndrome, operated on in 2016 and 17 with residual weakness, and ulnar neuropathy which has not been treated.  She has uncontrolled diabetes which causes neuropathy, imbalance, urinary frequency, and memory loss.  She has osteopenia which contributes to fractures when she does lose her balance and falls.

Tr. 786.

Dr. Lowengart also completed a residual functional capacity questionnaire for Plaintiff.  Tr. 788-93.  In the report, Dr. Lowengart reported that Plaintiff had a poor prognosis for improvement.  Tr. 788.  Plaintiff's pain and other severe symptoms would frequently interfere with Plaintiff's attention and concentration. Tr. 790.  Plaintiff's depression and anxiety would leave her

capable of low stress jobs.  *Id.*  She could walk for one block without rest or severe pain and could

sit 20 minutes and stand for 15 minutes before needing to change position.  *Id.*  She could stand or

walk for less than 2 hours in an eight-hour shift and sit for about 4 hours in an eight-hour shift.  *Id.*

She would need to have periods of walking lasting 1-2 minutes every 30 to 45 minutes.  Tr. 790-

91.  She would require jobs that permit shifting positions at will from sitting, standing, or walking.

Tr. 791.  She would need to take hourly unscheduled breaks lasting 10 minutes during an eight-

hour workday.  *Id.*  She can frequently lift or carry less than 10 pounds, occasionally lift or carry

10 pounds, rarely lift or carry 20 pounds, and never lift or carry 50 pounds.  *Id.*  She can

occasionally look down, turn her head left or right, and look up, but frequently hold her head in a

statis position.  *Id.*  She could occasionally twist and stoop, rarely climb stairs, and never crouch,

squat, and climb ladders.  Tr. 791-92.  Dr. Lowengart assessed significant limitations with

reaching, handling, and fingering: Plaintiff could grasp, turn, or twist objects with either hand 20%

of the time; perform fine manipulation 30% of the time; and reach 50% of the time.  Tr. 792.  Dr.

Lowengart opined that Plaintiff would be absent more than four days per month.  Tr. 792.

Dr. Lowengart's opinion is contradicted by the opinions of non-examining physicians Dr.

Moner and Dr. Kehrli.  Tr. 121.  The ALJ gave "no weight" to Dr. Lowengart's opinion, observing:

> At the outset, the undersigned notes that the ultimate issue of disability is reserved
> to the Commissioner.  As such, Dr. Lowengart's opinion regarding the claimant's
> disability as of October 2014 has been disregarded.  With respect to Dr.
> Lowengart's functional assessment, it is based on a single visit for purposes of
> disability application.  Dr. Lowengart's opinion concerns records and injuries that
> occurred 4 years prior to her opinion with a date last insured 2 years before her
> evaluation.  The amount of time elapsed between Dr. Lowengart's evaluation and
> the claimant's injuries does not in and of itself render the decision weightless,
> rather, the fact that Dr. Lowengart's opinion differs from the claimant's
> contemporaneous records as shown in the above analysis supports giving the
> opinion no weight.

Tr. 121.

The ALJ is correct that medical source opinions on issues reserved to the Commissioner are not medical opinions "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d). The ALJ did not, therefore, err in disregarding Dr. Lowengart's opinion that Plaintiff had been disabled since October 2014.

The ALJ noted that Dr. Lowengart evaluated Plaintiff long after the date last insured. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (internal quotation marks and citation omitted). A claimant "is eligible for coverage only if the current period of disability extends back continuously to an onset date prior to the expiration of insured status," and a claimant "may establish such continuous disabling severity by means of a retrospective diagnosis." *Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1462 (1995). "Retrospective diagnoses by treating physicians and medical experts, contemporaneous medical records, and testimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status." *Id.* at 1462 n.5. Here, as the Commissioner points out, Dr. Lowengart assessed conditions such as cognitive dysfunction, which cannot be related back to the period between the alleged onset date and the date last insured and appear to be new diagnoses. Dr. Lowengart also relied on medical records generated after the relevant period, which do not appear to relate back. Tr. 783-84, 786. This supports the ALJ's decision to give reduced weight to Dr. Lowengart's opinion.

Dr. Lowengart's opinion is also contradicted by the contemporary medical records from the period. For example, Dr. Lowengart opined that Plaintiff's carpal tunnel syndrome "further compromised her ability to use her upper extremities, starting in 2015," and that Plaintiff "has residual weakness." Tr. 786. However, this is contradicted by contemporary medical notes. *See,*

*e.g.*, Tr. 355 (February 2017, Plaintiff "has done very well after right carpal tunnel release" and is proceeding with a left carpal tunnel procedure); 396 (May 2016, Plaintiff "had her carpal tunnel repair on the right side more than a month ago and is doing well."); 577 (February 2017 Plaintiff "had previously undergone right carpal tunnel release, and is now doing well from this."); 586 (May 2016, in a post-operative note for Plaintiff's right carpal tunnel release she reported she "is doing very well" and "is very happy with her progress," and "numbness and tingling have nearly completely resolved.").

On this record, the Court cannot conclude that the ALJ erred by discounting the opinion of Dr. Lowengart.

## II.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony.  To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms.  *Id*.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (internal quotation marks and citation omitted).  An ALJ may use "ordinary techniques of

credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

Plaintiff fell and broke her hip while shopping at a grocery store. Tr. 140-41. Plaintiff testified that she was able to drive during the relevant period, beginning six months after fracturing her hip. Tr. 132-33. Plaintiff takes Norco for her hip. Tr. 138. After surgery and recovery, Plaintiff testified that she could stand for 20 to 30 minutes at most and sit for 30 minutes before needing to get up. Tr. 141-42. Plaintiff testified that she "can't sit for a long period of time and I can't stand for a long period of time" and that in an eight-hour shift she would "have to take quite a few breaks." Tr. 142. Plaintiff also suffers from peripheral neuropathy in her legs, which she testified causes shooting pain and burning sensation in her feet. Tr. 145. She treats the pain with Norco and ice. *Id.*

Plaintiff volunteered at the VFW for 18 hours per week but after she broke her hip, she was unable to tolerate more than 8 hours per week. Tr. 135. Plaintiff stopped volunteering entirely after fracturing her foot and her toe. Tr. 136.

Plaintiff had carpal tunnel surgery on her right side in March 2016 and on her left hand in February 2017. Tr. 139. Plaintiff testified that she became stable within months of her surgery and pain and tingling were gone, but she "still get[s] pain every once in while" and has no strength in her hand. Tr. 142. Plaintiff testified that she had limitations on her ability to lift and that frequently lifting 5 to 10 pounds would be "pushing it." Tr. 142-43. Plaintiff believed that she could occasionally lift 15 pounds. Tr. 143.

Plaintiff travelled to Mexico for vacation in 2016 and "was able to walk around." Tr. 145-46. Plaintiff also traveled to California and went to Disneyland, although she testified that she used a wheelchair, which she shared with her significant other. Tr. 146-47.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 119.

First, the ALJ observed that the record indicated improvement in Plaintiff's hip and arms. Tr. 119-20. The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). In this case, Plaintiff had hip surgery in October 2014, Tr. 707-09. In November 2014, Plaintiff was ambulating with a walker and "feels that she is getting along fairly well, particularly since she is just two weeks out from surgery." Tr. 450; *see also* Tr. 613 (November 2014, three weeks after surgery Plaintiff was "doing very well" and "feels stable in her feet" with "a bit of a limp and some lateral thigh pain in the region of her incision."). In late November 2014, Plaintiff was ambulating with a cane, "walking normally," with "little in the way of a limp." Tr. 447. Three months after the surgery, Plaintiff reported "doing very well," and was able to walk without a limp and stand on her right leg without difficulty. Tr. 611. This was contrary to Plaintiff's testimony at the hearing that it took eight months after the surgery before she was able to stand for 20 to 30 minutes. Tr. 141.

In August of 2015, Plaintiff reported "intermittent lateral thigh pain" without any specific inciting event or injury and that she "does feel the leg wants to buckle on her." Tr. 669. On exam, Plaintiff's gait was nonantalgic, straight leg raise test was negative, range of motion was not

painful, and there was no demonstrable strength or sensory deficit. *Id.* Plaintiff's physician recommended physical therapy, with a follow up in three months, but it does not appear that Plaintiff pursued this option. Tr. 670. Imaging of Plaintiff's leg revealed a healed fracture with minimal degenerative disease. Tr. 360.

On this record, the Court concludes that the ALJ correctly determined that Plaintiff's hip impairment was improved by treatment.

The ALJ also considered Plaintiff's carpal tunnel symptoms, noting that surgery was largely successful in relieving Plaintiff's symptoms. Tr. 120. As discussed in the previous section, this finding is borne out by the record.

With respect to Plaintiff's diabetes, the ALJ noted that there was an increase in Plaintiff's A1C in 2016, which Plaintiff attributed to eating inappropriately, but that by February 2017, Plaintiff reported that her diabetes was "well-controlled." Tr. 120. In March 2014, prior to the alleged onset date, Plaintiff's A1C was recorded as 10.1%. Tr. 517. Within the relevant period, Plaintiff's A1C fell to 8.9% by October 2014, Tr. 515, and had fallen to 7.1% by December 2014. Tr. 508. Plaintiff's A1C reached 8.2% by September 2016, which was reported as "the highest it has ever been," although this note appears to be in error in light of the 10.1% reading from March of 2014. Tr. 386. In treatment notes, Plaintiff reported that her A1C had gone up because she "drank a lot of alcohol" while on vacation. Tr. 403. By February 2017, shortly after the relevant period, Plaintiff's A1C was back down to 7.7%. Tr. 462. On this record, the Court cannot conclude that the ALJ erred in assessing Plaintiff's diabetes as controlled.

The ALJ also considered Plaintiff's neuropathy, noting that it was "managed with gabapentin." Tr. 119. This is borne out by the record. In November 2014, Plaintiff reported "day and night discomfort in her legs that seems to be fairly well managed with the gabapentin." Tr.

450.  In January 2015, Plaintiff was using less than one hydrocodone per day for her leg pain.  Tr.

439.  Plaintiff's gabapentin prescription increased in April 2015, Tr. 424-25, but Plaintiff's

gabapentin use was back down by July 2015.  Tr. 417-18.  In June 2017, Plaintiff reported that she

had increasing symptoms of neuropathy that gabapentin did not relieve, but this was some months

after the relevant period.  Tr. 747-48.  On this record, the Court cannot find that he ALJ erred by

finding that Plaintiff's neuropathy was managed by gabapentin.

Finally, the ALJ considered Plaintiff's daily activities as reported in the medical records

and, in particular, considered her vacations to Cabo San Lucas in February 2016 and to California

in September 2015.  Tr. 119-120.  In September 2015, Plaintiff's physician noted that Plaintiff had

swelling in her feet and ankles following her trip to California, which included a "full day trip to

Disneyland."  Tr. 416.  The doctor attributed Plaintiff's symptoms to "venous insufficiency

exacerbated by the high salt diet for several days, travel, and being on her feet all day at

Disneyland."  *Id.*  Several of other instances of travel and vacations are documented in the record

during and after the relevant period.  Tr. 393 (July 2016 medical note recording that Plaintiff

tripped over a chair while visiting her grandchildren in California); 342 (March 2016 note

indicating that Plaintiff was "leaving town for a month or so on 10 April,"); 682 (May 2016 note

recording that Plaintiff "has been very active" and "has a very busy summer planned,"); 849

(March 2018, Plaintiff reported that she is "going on a cruise.").  The ALJ reasonable interpreted

this travel schedule as inconsistent with the limitations Plaintiff reported in her hearing testimony.

On this record, the Court concludes that the ALJ did not err in discounting Plaintiff's

subjective symptom testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this _____21st_____ day of February 2023.


 /s/Ann Aiken_____
ANN AIKEN
United States District Judge